## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY HANNIS-MISKAR,<br>**Plaintiff** | : | No. 3:16cv142 |
| | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| | : | |
| NORTH SCHUYLKILL SCHOOL<br>DISTRICT, | : | |
| **Defendant** | : | |

### MEMORANDUM

Plaintiff Amy Hannis-Miskar (hereinafter "plaintiff") asserts discrimination and retaliation claims under the Americans with Disabilities Act, Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, and the Pennsylvania Human Relations Act arising from her employment with Defendant North Schuylkill School District (hereinafter "defendant" or "school district"). Before the court for disposition is defendant's motion to dismiss all claims within the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the court will grant in part and deny in part defendant's motion.

**Background**

The instant discrimination and retaliation action arises out of plaintiff's employment with the school district.  Plaintiff served as the Elementary School Assistant Principal from October 2008 until July 2014 and then as High School Assistant Principal from July 2014 until April 2015, when the plaintiff resigned. (Doc 1, Compl. (hereinafter "Compl.") ¶¶ 18, 129).

In September 2013, plaintiff, four months pregnant, submitted a letter to defendant, alleging harassment and retaliation due to her pregnancy.  (Id. ¶¶ 19, 21- 22, 24).  Plaintiff's pregnancy progressed normally and in February 2014 plaintiff took maternity leave.  (Id. ¶ 25).  Plaintiff returned from maternity leave on September 15, 2014.  (Id.)  While plaintiff was on maternity leave, the school district held two school board meetings that are relevant to plaintiff's complaint. At the first meeting, on June 18, 2014, the board approved retaining plaintiff as the Elementary School Assistant Principal.  (Id. ¶ 26).  Then, at the second meeting, on July 22, 2014, the board transferred plaintiff to Assistant High School Principal.  (Id. ¶ 26-27).  Plaintiff claims that the defendant transferred her from Elementary School Assistant Principal to High School Assistant Principal after her pregnancy to force her to resign.  (Id. ¶¶ 101, 115, 129).

Plaintiff filed a three-count complaint on January 27, 2016.  Count one asserts a claim under the Americans with Disabilities Act (hereinafter "ADA") 42

U.S.C. § 12101 *et seq*.  Count two states a cause of action under Title VII of the

Civil Rights Act (hereinafter "Title VII"), as amended by the Pregnancy

Discrimination Act 42 U.S.C. § 2000e *et seq*.  Count three is a claim under the

Pennsylvania Human Relations Act (hereinafter "PHRA") 43 PA. STAT. § 951.

Defendant filed the instant motion pursuant to Federal Rule of Civil Procedure

12(b)(6) on February 19, 2016.  (Doc. 6).  The parties have briefed the issues,

bringing the case to its current procedural posture.

**Jurisdiction**

As plaintiff brings suit pursuant to the ADA and Title VII, we have federal

question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States.").   We have supplemental jurisdiction over the

plaintiff's state-law PHRA claims pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Defendant filed its motion to dismiss the complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the

complaint's allegations when considering a Rule 12(b)(6) motion.  All well-

pleaded allegations of the complaint must be viewed as true and in the light

most favorable to the non-movant to determine whether, "'under any reasonable

reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v.

Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of

Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff

must describe "'enough facts to raise a reasonable expectation that discovery

will reveal evidence of' [each] necessary element" of the claims alleged in the

complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the

plaintiff must allege facts that "justify moving the case beyond the pleadings to

the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a

complaint the court may also consider "matters of public record, orders, exhibits

attached to the complaint and items appearing in the record of the case."

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir.

1994) (citations omitted).  The court does not have to accept legal conclusions

or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of

Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower

Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendant moves to dismiss all three counts of plaintiff's complaint,

arguing that plaintiff's allegations fail to state claims upon which relief can be

granted.  Plaintiff argues that she properly pled her ADA, Title VII, and PHRA

claims. After careful consideration, we will grant in part and deny in part defendant's motion to dismiss.

## I. ADA Claims

The defendant first moves to dismiss plaintiff's ADA discrimination and retaliation claims asserted in Count I of plaintiff's complaint. The ADA is designed to eliminate "discrimination against individuals with disabilities." 42 U.S.C. § 12101 (2009). To state a claim under the ADA, a plaintiff needs to establish that he or she is a "qualified individual with a disability[.]" Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 186 (3d Cir. 2009) (citing 42 U.S.C. § 12111 (8)). Under the ADA, a person qualifies as disabled when she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2)(A), "a record of such impairment," id. § 12102(2)(B), or is "regarded as having such an impairment," id. § 12102(2)(C). Reifer v. Colonial Intermediate Unit 20, 462 F. Supp. 2d 621, 632-33 (M.D. Pa. 2006).

In 2008, Congress passed the ADA Amendments Act (hereinafter "ADAAA"), providing that the "definition of disability . . . shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The federal regulations interpreting the ADAAA explain that "the term 'substantially

5

limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment."[1] Id. § 1630.2(j)(1)(iv). Moreover, "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." Id. § 1630.2(j)(1)(ix).

Regarding plaintiff's ADA discrimination claim, the plaintiff must plead that: "(1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job . . ., and (3) she has suffered an otherwise adverse employment decision as a result of discrimination." Hohider, 574 F.3d at 186 (citing Phila. Hous. Auth. Police Dep't, 380 F.3d at 757).

Here, plaintiff argues that defendant regarded her pregnancy as a disability. To be regarded as disabled within the meaning of 42 U.S.C. § 12102(2)(C), an individual must establish that he or she was "subjected to an

---

[1]"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102 (3)(A).  In order to prove that an employer regarded an employee as disabled, the employee must demonstrate that the employer "misinterpreted information about [the employee's] limitations to conclude that he was unable to perform a 'wide range or class of jobs.'" Keyes v. Catholic Charities of the Archdiocese of Phila., 415 F. App'x 405, 410 (3d Cir. 2011) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 757 (3d Cir. 2004)); see also Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 192 (3d Cir. 1999) ("An employer who simply, and erroneously, believes that a person is incapable of performing a *particular* job will not be liable under the ADA.") (emphasis added).

In the instant matter, plaintiff's pregnancy discrimination claim fails for two reasons.  First, federal courts that have addressed whether pregnancy, absent complications, is itself a disability have determined that a normal pregnancy is not a physical impairment limiting one or more major life activities.  See Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 553 (7th Cir. 2011) (noting that courts consistently determine that pregnancy, absent unusual circumstances, is not a physical impairment), *abrogated on other grounds by* Young v. United Parcel Serv., 135 S. Ct. 1338 (2015);  Brennan v. Nat'l Tel.

Directory Corp., 850 F. Supp. 331, 333 (E.D. Pa. 1994); see also Kelly v.

Horizon Med. Corp., No. CIV.A. 3:11-1501, 2014 WL 1293859, at *11 (M.D. Pa.

Mar. 31, 2014) (explaining that the ADA "statute itself clearly indicates that

pregnancy was not to be considered an impairment covered by the Act.").

Because plaintiff fails to assert complications with her pregnancy, she has failed

to plead a disability under the ADA.

Second, the plaintiff failed to aver that the defendant regarded her

pregnancy as a disability.  Specifically, plaintiff's only allegations that relate to

defendant potentially regarding her pregnancy as a disability are the principal's

statements.  Plaintiff claims that the principal made certain statements, such as,

"I was told you were not coming back," "I planned on being alone for the first

part of the year," and "Everyone said that you were pregnant again," which

plaintiff argues are sufficient to state a claim that defendant regarded her as

disabled.  (Compl. ¶ 50(a, b, e)).  The principal's comments, however, fail to

imply that the plaintiff could not perform a "wide array of jobs." Keyes, 415 F.

App'x at 410 (citing Williams, 380 F.3d at 757).

In short, plaintiff has failed to plead that her pregnancy qualifies as a disability under the ADA or that the defendant regarded her pregnancy as a disability.[1]   Thus, the court will grant defendant's motion to dismiss Count I.

## II. Title VII and PHRA Claims

Defendant next seeks to dismiss plaintiff's discrimination and retaliation claims under Title VII, as amended by the Pregnancy Discrimination Act (hereinafter "PDA").[2]   To establish a claim for pregnancy discrimination under Title VII, plaintiff must demonstrate that: 1) she is or was pregnant and that the employer knew, 2) she was qualified for her job, 3) she suffered an adverse employment action, and 4) a nexus exists between her pregnancy and the adverse employment action that allows for an inference of discrimination. Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008).   Further, to establish a claim for retaliation, plaintiff must demonstrate "(1) [that she engaged in] protected employee activity; (2) adverse [employment] action by the

---

[1] Because the court will dismiss plaintiff's ADA discrimination claim, the court will likewise dismiss plaintiff's ADA retaliation claim.  The court's dismissal of plaintiff's ADA retaliation claim, however, will have no substantive impact on plaintiff because, as explained in section II *infra*, the court will allow plaintiff's PDA and PHRA retaliation claims to proceed.

[2] Claims under Title VII and PHRA require an identical analysis, therefore our analysis of Count II applies to Count III as well.  Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir.2001) ("The proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably."), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted).

Defendant presents two arguments pertaining to the dismissal of plaintiff's PDA discrimination and retaliation claims.  First, defendant argues that plaintiff has not sufficiently pled an adverse employment action as required for both discrimination and retaliation claims under Title VII.  Second, defendant argues that if an adverse employment action occurred, plaintiff has not sufficiently pled a temporal or causal connection to sustain a claim for retaliation.  We address each argument in turn.

**A. Plaintiff sufficiently pled adverse employment action.**

Initially, the defendant argues that plaintiff failed to sufficiently plead an adverse employment action.  The Supreme Court of the United States defines an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. . . .  A tangible employment action in most cases inflicts direct economic harm." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see also  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (defining an adverse

employment action as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.") (citations and internal quotation marks omitted).

Furthermore, the Supreme Court classifies a constructive discharge as an adverse employment action. Pa. State Police v. Suders, 542 U.S. 129, 143 (2004). A constructive discharge occurs when an "employer knowingly [permits] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984). Moreover, the Third Circuit employs an "objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013) (citation omitted). Factors considered when assessing a claim of constructive discharge include "whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, *involuntarily transferred to a less desirable position, subject to altered job responsibilities*, or given unsatisfactory job evaluations." Id. at 170 (citing Colwell v. Rite Aid Corp., 602 F.3d 495, 503 (3d Cir. 2010) (emphasis added).

The Third Circuit also explained that "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally

11

insufficient to constitute adverse employment actions." <u>Langley v. Merck & Co.</u>, 186 F. App'x 258, 260 (3d Cir. 2006).  The Supreme Court, however, stated that "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 71 (2006) (citation omitted) (internal quotation marks omitted).

Plaintiff alleges that her transfer to the high school is an adverse employment action.  Defendant, on the other hand, characterizes the transfer as a lateral change in employment followed by a resignation.  Defendant also argues that plaintiff alleged no changes in compensation, terms, or benefits of her employment.  After applying the factors used to assess the criteria for a constructive discharge, the court finds that plaintiff has pled sufficient facts to survive a motion to dismiss.

In assessing the merits of plaintiff's allegation of constructive discharge, the court remains mindful that "subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." <u>Mandel</u>, 706 F.3d at 169.  Plaintiff's allegations clearly indicate that she found the position of High School Assistant Principal "less desirable" than Elementary School Assistant Principal. <u>Id.</u> at 170.  Additionally, plaintiff alleged that other employees also

believed that defendant wanted her to quit.[3]   Plaintiff also claims that she worked longer and that she received work assignments at the last minute. (Compl. ¶¶ 43, 48).   Moreover, plaintiff alleged that another employee noticed that defendant assigned her demeaning jobs.  (Id. ¶ 113).   Further, plaintiff claims that, shortly before her return, someone removed the furniture in her office and replaced it with furniture in disrepair.  (Id. ¶¶ 51, 54).   Plaintiff also alleges that defendant initially excluded her from a training session and reassigned duties that properly belonged to her.  (Id. ¶¶ 99-103, 46).

We find that, taken as a whole, plaintiff has pled sufficient facts to allege constructive discharge, which constitutes an adverse employment action, required for both discrimination and retaliation claims under Title VII.  Plaintiff alleges an "[involuntary transfer] to a less desirable position [and being] subject to altered job responsibilities[.]"  Mandel, 706 F.3d at 170.  Moreover, plaintiff alleges that she, as well as coworkers, believed that defendant "encourag[ed] her to resign[.]"  Id.  We find it plausible, at least for the purposes of the motion to dismiss, that a "reasonable person subject to [these conditions] would

---

[3] Plaintiff alleges that she and other faculty members believed that defendant treated her unfairly, causing her to quit.  Plaintiff's allegations include claims that: "every single day a staff member asked 'what did you do wrong to deserve this?'" (Compl. ¶ 95); plaintiff believed the district was trying to "push her out the door" or "get her to quit" (Id. ¶ 101); a teacher spoke with her and indicated that he did not want to see defendant "push plaintiff out or [force her to leave]" (Id. ¶ 108); the same teacher said others "wanted to see plaintiff stay" (Id. ¶ 112); and a second teacher believed that defendant wanted plaintiff to quit (Id. ¶ 124).

resign[.]" Goss, 747 F.2d at 888.  Thus, plaintiff sufficiently states a claim for constructive discharge.

Moreover, even if defendant correctly characterizes plaintiff's change in position as a lateral transfer, whether such a reassignment constitutes an adverse employment action must be determined from the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 71 (citation omitted) (internal quotation marks omitted).  In addition to the aforementioned allegations, plaintiff claims that she excelled in her capacity as Assistant Elementary School Principal, that she would need to be retrained for her new position, and that she felt as though the transfer was a punishment. (Compl. ¶¶ 97, 42, 92).  Based on those facts, we find it plausible that, considering all the circumstances, a reasonable person in plaintiff's position could view this transfer as an adverse employment action.

Viewing the allegations in plaintiff's complaint as true, we find that plaintiff has sufficiently pled an adverse employment action as required for both discrimination and retaliation claims under Title VII and PHRA.

## B. Plaintiff sufficiently pled causal connection between protected action and retaliatory conduct.

The defendant next moves to dismiss plaintiff's retaliation claims under Title VII, arguing that plaintiff failed to plead a sufficient temporal or causal

connection between plaintiff's protected action and defendant's adverse employment action.  We disagree.

As stated above, to establish a claim for retaliation, Plaintiff must allege an "adverse [employment] action by the employer either after or contemporaneous with the employee's protected activity. . . and a causal connection between the employee's protected activity and the employer's adverse action."  Daniels, 776 F.3d at 193 (citations omitted).  In addition, "protected opposition activity includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management."  Id. (citation omitted) (internal quotation marks omitted).

Regarding the causal connection between protected activity and defendant's adverse action, the Third Circuit has held that:

> a plaintiff may rely on the temporal proximity between the two if unusually suggestive.  In the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action.

Id. at 196. (internal citations and quotation marks omitted).

Here, plaintiff has properly pled that her September 2013 letter and her maternity leave are protected activities.  In the instant matter, plaintiff submitted

15

her letter, which contained complaints of gender discrimination, pregnancy discrimination, and harassment, in September of 2013, at which time she was four months pregnant.  (Compl. ¶¶ 21-22, 24).  Furthermore, defendant transferred plaintiff to a new position while she was on maternity leave, which is also a protected activity under the PDA.  Plaintiff began maternity leave in February 2014, was transferred on July 22, 2014, and returned on September 15, 2014.  (Id. ¶¶ 25, 27).  After returning from maternity leave and starting in her new position, plaintiff, on more than one occasion, spoke with various school district employees regarding the transfer.[4]  During these discussions, defendant was "inconsist[ent] in the reason[ing]" for the job transfer.[5]  Daniels, 776 F.3d at 196.  Additionally, plaintiff claims that coworkers told her that other employees were punished (Compl. ¶¶ 110-111) in relation to pregnancy, giving her further "evidence suggesting that [defendant] had a retaliatory animus" when transferring her.  Id. (citations omitted).

---

[4] Plaintiff claims that she heard comments from or had conversations regarding the transfer with the superintendent, principal, and school board members. (Compl. ¶¶ 36-42, 50(d), 86-92, 99-101).

[5] Plaintiff alleges that defendant claimed that the transfer was "the best decision for the district," "had to do with personalities," was because plaintiff possessed a "background in sports," that it was a "board decision decided before [superintendent] got there, but ultimately he had to make it," and that the "move has more to do with Maggie than with [plaintiff][.]"  (Compl. ¶¶ 37, 38, 40, 42, 50(d)).

While plaintiff's allegations may demonstrate an "absence of . . . . close temporal proximity, we consider the circumstances as a whole" when assessing the causal connection between the protected activity and adverse action. Id. (citations omitted). Here, ten months passed between the time when plaintiff submitted her first letter and when the defendant transferred her. Defendant argues that too much time elapsed between these events to establish causality. We disagree.

As previously stated, plaintiff was four months pregnant when she submitted the letter alleging pregnancy discrimination and began maternity leave approximately four to five months thereafter. The alleged adverse employment action took place while plaintiff was on maternity leave. Upon her return, the principal allegedly commented about her pregnancy. These events all relate to plaintiff's pregnancy. We are satisfied that, when assessing the circumstances as a whole, in the context of pregnancy and maternity leave, plaintiff has alleged a sufficient causal connection between her protected activity and defendant's adverse employment action.

Viewing the allegations in plaintiff's complaint as true, we find that plaintiff has sufficiently pled a causal and temporal connection between her protected activity and defendant's adverse employment action to state a viable claim under Title VII.

17

## Conclusion

For the reasons set forth above, defendant's motion to dismiss will be granted in part and denied in part.  The court will grant defendant's motion to dismiss Count I, discrimination and retaliation under the ADA.  Remaining in the case are plaintiff's Count II and III, discrimination and retaliation claims under Title VII and the PHRA.  An appropriate order follows.

Date: ___1/22/16___

JUDGE JAMES M. MUNLEY
United States District Court